# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

DENNIS THOMAS

        Plaintiff,

    v.

HERNANDEZ, et al.,

        Defendants.

No.  2:21-cv-1638-DJC-DMC-P

FINDINGS AND RECOMMENDATIONS

Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983.  Pending before the Court is Defendants' motion for summary judgment.  See ECF No. 55. Plaintiff has filed an opposition. See ECF No. 56.  Defendants have filed a reply. See ECF No. 58.  Also before the Court is Plaintiff's motion, which has been docketed as a motion for summary judgment.[1]  See ECF No. 61.  Defendants have filed an opposition.  See ECF No. 63.  Plaintiff has not filed a reply.

/ / /

/ / /

/ / /

---

[1]      In Plaintiff's one-page filing, Plaintiff states that he is demanding summary judgment in response to Defendants' motion for summary judgment.  See ECF No. 61.  Plaintiff's motion is not accompanied by any evidence or substantive argument.

1

The Federal Rules of Civil Procedure provide for summary judgment or summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The standard for summary judgment and summary adjudication is the same. See Fed. R. Civ. P. 56(a), 56(c); see also Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Under summary judgment practice, the moving party

> . . . always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id., at 323 (quoting former Fed. R. Civ. P. 56(c)); see also Fed. R. Civ. P. 56(c)(1).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); see also Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987). To demonstrate that an issue is genuine, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no

'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).  It is sufficient that "the claimed factual dispute be shown to require a trier of fact to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. See Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed, see Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251.

## I. BACKGROUND

This action proceeds on Plaintiff's first amended complaint.  See ECF No. 17. The Court previously summarized Plaintiff's allegations as follows:

> Plaintiff's complaint contains five claims and twenty defendants.  See ECF No. 17. On October 12, 2020, Defendants Arredondo and Hernandez, correctional officers, escorted Plaintiff to his new housing block. See id. at 3-5. Plaintiff states that, while being escorted, he was informed that he was not going to the original housing block but was instead going to "B-Yard," where he has enemies. Id. at 5. Plaintiff claims he stopped walking after receiving this news to express his opposition to going to B-Yard. See id. According to Plaintiff, Arredondo threw Plaintiff face first into the ground, causing serious injuries to his face, shoulder, wrist, back, neck, arms, and feet. See id. Arredondo allegedly then climbed on top of him, pressing his knees into Plaintiff's neck and back, causing Plaintiff to lose consciousness. See id. When he regained consciousness, Arredondo was allegedly still on top of him, and a group of prison employees were surrounding them. See id. Plaintiff alleges that Defendants Cabrera and Rinaudo, correctional officers, and Saltsgayer, a registered nurse for the prison, were the only employees present. See id. at 6. However, Plaintiff also contends that twenty to thirty

3

officers were surrounding him at that time. See id. at 14. Plaintiff claims that Saltsgayer performed a medical evaluation of him, but did so insufficiently because she cleared him to continue being escorted to B-Yard despite observing Plaintiff's extensive injuries. See id. at 16.

Plaintiff filed a grievance about the incident. See id. at 8. Plaintiff claims that Defendant Arredondo retaliated against him by filing a false Rules Violation Report ("RVR") because of his grievance. See id. at 8-9. Plaintiff claims that Defendants Hernandez, Cabrera, Rinaudo, Silva, Mossman, Albonico, Sieberg, Watkins, Moseley, Pickett, Walter, Williams, Krause, Perry, Del Campo, Renner, Alkine, Sevy, and Wallace participated in the retaliation by helping to cover up the truth of the event, including filing misleading or incorrect reports about the altercation and withholding video evidence of the attack. See id. at 5-12. While a disciplinary hearing took place regarding the RVR, Plaintiff charges that he was not notified of the hearing and was denied the opportunity to present evidence. See id. at 5-9, 12. As of November 16, 2021, Plaintiff claims he has not received medical treatment for the injuries he sustained on October 12, 2020. See id. at 15-17.

ECF No. 20 at 2-3.

The Court ordered that this action proceed on Plaintiff's Eighth Amendment excessive force claim and First Amendment retaliation claim against Defendant Arredondo, Plaintiff's Eighth Amendment claim based on failure to protect against Defendant Hernandez, and Plaintiff's Eighth Amendment medical deliberate indifference claim against Defendant Saltsgayer. See ECF No. 25. All other claims and defendants were dismissed. See ECF No. 35.

Defendants Arredondo and Saltsgayer filed an answer to the first amended complaint. See ECF No. 33. Summons was returned unexecuted as to Defendant Hernandez. See ECF No. 32.

## II. THE PARTIES' EVIDENCE

### A.    Defendants' Evidence

Defendants' motion for summary judgment is supported by: (1) a separate statement of undisputed facts, ECF No. 55-1, (2) the declaration of defense counsel Paul Kozina, Esq., and attached exhibits, ECF No. 55-2, (3) the declaration of J. Arredondo and attached exhibits, ECF No. 55-3, (4) the declaration of B. Saltsgaver and attached exhibits, ECF No. 55-4, (5) the declaration of S. Barnes and attached exhibits, ECF No. 55-5, (6) the declaration of K. Martin and attached exhibits, ECF No. 55-6, (7) the declaration of Howard E. Moseley and

attached exhibits, ECF No. 55-7, and (8) the transcript of Plaintiff's August 21, 2024 deposition, which has been lodged with the Court.

Defendants assert that the following facts related to the alleged use of force by Defendant Arredondo are undisputed:

1.      On October 12, 2020, Plaintiff was being escorted to B yard.  Arredondo Decl., ¶ 2.

2.      Enroute, near tower 6, Plaintiff stated "How is the hole here."  Arredondo Decl., ¶ 3.

3.      Defendant Arredondo informed Plaintiff that he was going to B yard and not to Short Term Restricted Housing. Arredondo Decl., ¶ 3.

4.      Plaintiff stated that he was not going to B yard and began to resist. Arredondo Decl., ¶ 3.

5.      Plaintiff planted his feet on the ground and refused to continue moving. Arredondo Decl., ¶ 3.

6.      Defendant Arredondo told Plaintiff to stop resisting and continue moving. Arredondo Decl., ¶ 4.

7.      Defendant Arredondo told Plaintiff that he could speak to the sergeant about his safety concerns once they arrived at B yard. Arredondo Decl., ¶ 4.

8.      Plaintiff refused to comply with Defendant Arredondo's orders and continued to resist. Arredondo Decl., ¶ 4.

9.      Plaintiff tried to pull away from Defendant Arredondo's control by turning to the right and pushing his body weight backwards toward the right side of Defendant Arredondo's body and leg. Arredondo Decl., ¶ 4.

10.     Defendant Arredondo ordered Plaintiff to get down, but Plaintiff refused and continued to resist. Arredondo Decl., ¶ 4.

11.     To diffuse the situation, retore order, and maintain control, Defendant Arredondo then took Plaintiff to the ground. Defendant Arredondo maintained control of Plaintiff by placing his left knee on Plaintiff's lower back and his right hand over on his upper back. Arredondo Decl., ¶¶ 5-6.

12.     At no time did Defendant Arredondo apply pressure to Plaintiff's back. Defendant Arredondo never hit, punched, kicked, or used otherwise abusive tactics on Plaintiff. Arredondo Decl., ¶¶ 7 and 9.

13.     Once on the ground, Plaintiff stopped resisting. Arredondo Decl., ¶ 6.

* * *

18.     During Plaintiff's deposition, he admitted that, as the officers were transporting Plaintiff to B yard, he stopped moving because he did not want to go. Kozina Decl., ¶ 4, Ex. E, 39:7-24.

19.     Plaintiff also admitted that, when the officers attempted to get Plaintiff to keep moving, he resisted. Kozina Decl., ¶ 4, Ex. E., 39:25-41:4.

21.     Plaintiff admitted that he has no photos showing his injuries, no witnesses to corroborate his story, no supporting medical records, and no other evidence establish his claim. Kozina Decl., ¶ 4, Ex. E.,54:12-56:12.

* * *

25.     During written discovery, Plaintiff admitted that Defendant Arredondo did not throw him to the ground, did not climb on top of him and press him to ground, and did not place his knee on Plaintiff's neck. Kozina Decl., ¶ 2, Ex. C, RFA Nos. 1-3.

26.     Plaintiff also admitted that Defendant Arredondo did not use excessive force against him. Kozina Decl., ¶ 2, Ex. C, RFA Nos. 4 and 17.

ECF No. 55-1, pgs. 1-5.

Defendants next outline the following undisputed facts related to Plaintiff's medical deliberate indifference claim against Defendant Saltsgayer:

14.     Defendant Saltsgaver subsequently arrived to medically evaluate Plaintiff. Declaration of B. Saltsgaver (Saltsgaver Decl.), ¶ 2.

15.     Defendant Saltsgaver noted that Plaintiff had abrasions to the left side of his face and left shoulder. Nurse Saltsgaver also noted that Plaintiff had a skin tear on the left side of his face. Nurse Saltsgaver determined that none of Plaintiff's injuries required that he receive further medical treatment. Saltsgaver Decl., ¶ 3.

16.     Following her evaluation, Defendant Saltsgaver cleared Plaintiff for transport to B-yard. Saltsgaver Decl., ¶¶ 3-4.

* * *

29.     Regarding his claims against Defendant Saltsgaver, Plaintiff admitted that Defendant Saltsgaver gave him appropriate medical care on October 12, 2020. Kozina Decl., ¶ 2, Ex. C, RFA No. 9.

ECF No. 55-1, pgs. 3-4, 6.

///

///

6

Defendants also assert the following undisputed facts related to Plaintiff's retaliation claim against Defendant Arredondo:

> 23.     Plaintiff admitted during his deposition that he has no basis for his retaliation claim against Defendant Arredondo. Plaintiff also stated that he was willing to drop his retaliation claim. Kozina Decl., ¶ 4, Ex. E., 71:11-72:16.
>
> ECF No. 55-1, pg. 5.

Finally, Defendants note the following:

> 30.     Plaintiff admitted that he has no evidence to support any of his claims.  Kozina Decl., ¶ 2, Ex. C, RFA Nos. 10-13 and 15.
>
> ECF No. 55-1, pg. 6.

### B.     **Plaintiff's Evidence**

Plaintiff has not filed a separate statement of disputed facts but has attached as Exhibit A to his opposition a copy of a Medical Report of Injury or Unusual Occurrence (form CDCR 7219), dated October 12, 2020. See ECF No. 56, pg. 3. In addition to this exhibit, the Court will also consider Plaintiff's verified first amended complaint as his declaration.

### III. DISCUSSION

In their motion for summary judgement, Defendants Arredondo and Saltsgayer argue that they are entitled to judgment in their favor as a matter of law because the undisputed evidence shows: (1) Plaintiff failed to exhaust his administrative remedies as to his Eighth Amendment medical deliberate indifference claim against Defendant Saltsgayer; (2) Defendant Arredondo's minimal use of force was warranted; (3) there is no evidence showing that Defendant Saltsgayer knew of and consciously disregarded a serious medical risk to Plaintiff; and (4) Plaintiff admits that he has no evidence to support his First Amendment retaliation claim against Defendant Arredondo and the timing of events belies any such claim.  See ECF No. 55, pg. 2.  For the reasons discussed below, the Court finds that, assuming proper exhaustion of administrative remedies, Defendants are entitled to judgment as a matter of law on the merits of Plaintiff's Eighth Amendment and First Amendment claims.  The undersigned therefore does not

7

reach the exhaustion issue.

###    A.    Eighth Amendment Claims

Plaintiff asserts two claims under the Eighth Amendment – excessive force against Defendant Arredondo, and medical deliberate indifference against Defendant Saltsgayer.

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment.  See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994).  The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency."  Estelle v. Gamble, 429 U.S. 97, 102 (1976).  Conditions of confinement may, however, be harsh and restrictive.  See Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety."  Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986).  A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm.  See Farmer, 511 U.S. at 834.  Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind."  See id.

###          1.    Excessive Force Claim Against Defendant Arredondo

When prison officials stand accused of using excessive force, the core judicial inquiry is ". . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  Hudson v. McMillian, 503 U.S. 1, 6-7 (1992); Whitley v. Albers, 475 U.S. 312, 320-21 (1986).  The "malicious and sadistic" standard, as opposed to the "deliberate indifference" standard applicable to most Eighth Amendment claims, is applied to excessive force claims because prison officials generally do not have time to reflect on their actions in the face of risk of injury to inmates or prison employees.  See Whitley, 475 U.S. at 320-21.  In determining whether force was excessive, the court considers the following factors: (1) the need for application of force; (2) the extent of injuries; (3) the relationship

between the need for force and the amount of force used; (4) the nature of the threat reasonably perceived by prison officers; and (5) efforts made to temper the severity of a forceful response. See Hudson, 503 U.S. at 7.  The absence of an emergency situation is probative of whether force was applied maliciously or sadistically.  See Jordan v. Gardner, 986 F.2d 1521, 1528 (9th Cir. 1993) (en banc).  The lack of injuries is also probative.  See Hudson, 503 U.S. at 7-9.  Finally, because the use of force relates to the prison's legitimate penological interest in maintaining security and order, the court must be deferential to the conduct of prison officials.  See Whitley, 475 U.S. at 321-22.

Defendants contend that application of the Hudson factors demonstrate that Defendant Arredondo's use of force did not violate the Eighth Amendment. Specifically, Defendants argue the following: (1) Plaintiff suffered minimal injuries during the October 12, 2020 incident, (2) Defendant Arredondo needed to use force after Plaintiff refused to comply with orders, (3) Defendant Arredondo used no more force than was necessary, (4) Defendant Arredondo reasonably perceived Plaintiff as a threat when Plaintiff refused to comply with orders, and (5) Defendant Arredondo tempered his response to Plaintiff's actions. ECF No. 55, pgs. 19-22.  The Court agrees with Defendants that, considering the Hudson factors, the undisputed evidence shows that Defendant Arredondo's use of force was not excessive.

i.    Extent of Injuries Suffered by Plaintiff

First, in support of their argument that Plaintiff suffered only minimal injuries as a result of October 12, 2020, incident, Defendants assert the following as undisputed evidence:

> . . .Defendant Saltsgayer's medical records noted that Plaintiff had minor abrasions to the left side of his face and left shoulder. (SUF 15.) Plaintiff had a skin tear on the left side of his face. (SUF 15.) Following her evaluation, Defendant Saltsgayer cleared Plaintiff for transport to B-yard. (SUF 16.) Plaintiff further admitted that he has no photos showing his injuries, no witnesses to corroborate his story, no supporting medical records, and no other evidence establishing his claims. (SUF 21.)

ECF No. 55, pg. 20.

///

///

///

The Court agrees with Defendants that the evidence shows Plaintiff suffered, at most, minimal injuries.  Notable among the evidence presented by Defendants is Exhibit C to the declaration of defense counsel Paul Kozina, Esq.  This exhibit consists of Defendants requests for admissions to Plaintiff.  See ECF No. 55-2, pgs. 29-37.  Request for admission no. 8 asks: "Admit that you did not sustain any injuries as a result of the incident that occurred on October 12, 2020." Id. at 33.  Plaintiff never responded to this request or any other of Defendants' discovery requests.  See id. at 2.  As a result of Plaintiff's failure to respond to Defendants' requests for admissions, including request no. 8, the matters are deemed admitted.  See Fed. R. Civ. P. 36(a)(3).  Thus, it is established as a matter of fact that Plaintiff did not sustain any injuries as a result of the October 12, 2020, incident other than, at most, minor abrasions.

ii.    Need for Application of Force

Second, Defendants argue that Defendant Arredondo was required to use force to restore order and maintain discipline.  Defendants assert the following as undisputed evidence:

> When Plaintiff refused to continue moving, Defendant Arredondo was required to use force to restore order and maintain discipline. Plaintiff admits that he was refusing to move after he allegedly learned that he was going to B yard instead of STHU. (SUF 18.) Plaintiff acted in contravention to a direct order. (SUF 19.) Thus, Defendant Arredondo was required to use force to get Plaintiff to comply, and Defendant Arredondo only used minimal force. (SUFs 3-11.)

ECF No. 55, pg. 20-21.

The Court agrees that the evidence shows that Defendant Arredondo used that force which was necessary to restore order.  Again, the Court notes Plaintiff's failure to respond to Defendants' discovery requests.  Defendants' request for admission no. 5 asks: "Admit that you resisted and pulled away from Defendant Arredondo when you were informed that you were being taken to B-yard on October 12, 2020." ECF No. 55-2, pg. 31. Request for admission no. 7 asks: "Admit that you refused to comply with orders that you continue with your transfer to B yard on October 12, 2020." Id. at 32.  Plaintiff never responded to these requests for admissions. See id. at 2.  Because Plaintiff never responded to Defendants' requests for admissions, the matters asserted in request nos. 5 and 7 are deemed established as a matter of fact.  See Fed. R. Civ. P. 36(a)(3).  Thus, the Court finds that the undisputed evidence shows that Arredondo's use

10

of force on October 12, 2020, was necessary in order to respond to Plaintiff's resistance and refusal to comply.

### iii.    Amount of Force Used

Third, Defendants argue that Defendant Arredondo used the minimal force necessary to secure Plaintiff.  According to Defendants:

> . . .When Plaintiff refused to continue moving to B yard, Defendant Arredondo took Plaintiff to the ground while Plaintiff continued to resist. (SUFs 3-11.) Once on the ground, Plaintiff stopped resisting. (SUF 13.) …Defendant Arredondo did not hit, punch, kick, or otherwise use any abusive tactics on Plaintiff. (SUF 12.) Defendant Arredondo simply took Plaintiff to the ground, where Plaintiff sustained minimal injuries. (SUF 15.)

ECF No. 55, pg. 21.

As with the factors discussed above, the amount of force used in this case is established by Plaintiff's failure to respond to requests for admissions.  Request for admission no. 1 asks: "Admit that Defendant Arredondo did not throw you to the ground on October 12, 2020." ECF No. 55-2, pg. 30.  Request for admission no. 2 asks: "Admit that Defendant Arredondo did not climb on top of you and press you to the ground on October 12, 2020." Id. Request for admission no. 3 asks: "Admit that Defendant Arredondo did not place his knee on your neck on October 12, 2020." Id. at 31.  Finally, request for admission no. 4 asks: "Admit that Defendant Arredondo did not use more force than was necessary to stop you from resisting on October 12, 2020."  Id.   Because Plaintiff failed to respond to these discovery requests, the matters are deemed admitted.  See Fed. R. Civ. P. 36(a)(3).  Thus, the Court agrees with Defendants that the undisputed evidence shows that Defendant Arredondo used no more than minimal force in order to secure Plaintiff.

### iv.    Nature of the Threat

Fourth, Defendants argue that because "Plaintiff resisted Defendant Arredondo's order to continue moving," Defendant reasonably perceived Plaintiff as a threat. See ECF No. 55, pg. 21. Defendants assert that "when Plaintiff resisted Defendant Arredondo's orders to continue moving, Defendant's only option was to secure Plaintiff and restore order. (SUFs 3-11.)" Id. The Court agrees that the undisputed evidence establishes that Plaintiff was resisting.  In particular,

11

the Court notes Plaintiff's deposition during which he testified that he was in fact resisting Arredondo's orders on October 12, 2020.  See ECF No. 55-2, pg. 45 ("I wasn't doing that much resisting").  In any event, even if Plaintiff was not physically resisting Arredondo's orders, as discussed above, the evidence establishes that Plaintiff verbally refused Arredondo's orders.

### v.    Efforts to Temper Response

Lastly, Defendants assert that Defendant Arredondo tempered his response to Plaintiff's actions because Defendant Arredondo was required to restore order by taking Plaintiff to the ground as he continued to resist. See ECF No. 55, pg. 21. The Court agrees because the evidence shows that the amount of force used was minimal and Defendant Arredondo did not escalate the use of force after Plaintiff complied.  As stated above, Defendant Arredondo took Plaintiff to the ground at which time Plaintiff stopped resisting. ECF No. 55-3, pgs. 2-3. Defendant Arredondo did not throw Plaintiff to the ground, press Plaintiff to the ground, or place his knee on Plaintiff's neck. See ECF No. 55-2, pgs. 30-31. Thus, the undisputed evidence supports the conclusion that Defendant Arredondo tempered his response to Plaintiff's actions.

### 2.    Medical Deliberate Indifference Claim Against Defendant Saltsgayer

Deliberate indifference to a prisoner's serious illness or injury, or risks of serious injury or illness, gives rise to a claim under the Eighth Amendment.  See Estelle, 429 U.S. at 105; see also Farmer, 511 U.S. at 837.  This applies to physical as well as dental and mental health needs.  See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982).  An injury or illness is sufficiently serious if the failure to treat a prisoner's condition could result in further significant injury or the ". . . unnecessary and wanton infliction of pain." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994). Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily activities; and (3) whether the condition is chronic and accompanied by substantial pain.  See Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

/ / /

/ / /

12

The requirement of deliberate indifference is less stringent in medical needs cases than in other Eighth Amendment contexts because the responsibility to provide inmates with medical care does not generally conflict with competing penological concerns. See McGuckin, 974 F.2d at 1060. Thus, deference need not be given to the judgment of prison officials as to decisions concerning medical needs. See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989). The complete denial of medical attention may constitute deliberate indifference. See Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986). Delay in providing medical treatment, or interference with medical treatment, may also constitute deliberate indifference. See Lopez, 203 F.3d at 1131. Where delay is alleged, however, the prisoner must also demonstrate that the delay led to further injury. See McGuckin, 974 F.2d at 1060.

As to the merits of Plaintiff's Eighth Amendment medical care claim for deliberate indifference, Defendants contend that no evidence demonstrates that Defendant Saltsgayer knew of a serious medical risk and consciously disregarded the risk. See ECF No. 55, pgs. 22-23. It is undisputed that Defendant Saltsgaver conducted a medical examination and cleared Plaintiff to continue being transported to B yard. Plaintiff states in his verified complaint that "Defendant Saltsgaver had done the medical evaluation and cleared me to continue being escorted." ECF No. 17, pgs. 14-15. Defendant Saltsgaver stated in her declaration that she identified and catalogued Plaintiff's injuries, found that Plaintiff did not require any additional medical treatment, and cleared and authorized Plaintiff for further transport. See ECF No. 55-4, pg. 2. This evidence, which is undisputed, establishes that Defendant Saltsgayer was not deliberately indifferent but, instead, provided medical treatment to Plaintiff after the incident on October 12, 2020.

Moreover, the undisputed evidence establishes that Plaintiff did not present with a serious medical condition. A claim for medical deliberate indifference necessarily turns on the requirement that the plaintiff have a serious illness or injury. As discuss above, Plaintiff failed to respond to request for admission no. 8, which asked: "Admit that you did not sustain any injuries as a result of the incident that occurred on October 12, 2020." ECF No. 55-2, pg. 33. Thus, it is established as a matter of fact that Plaintiff did not sustain any injuries and, therefore, did not present to Defendant Saltsgayer with a serious medical condition. See Fed. R. Civ. P. 36(a)(3).

13

**B.**      **First Amendment Retaliation Claim**

In order to state a claim under 42 U.S.C. § 1983 for retaliation, the plaintiff must establish that he was retaliated against for exercising a constitutional right, and that the retaliatory action was not related to a legitimate penological purpose, such as preserving institutional security.  See Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam).  In meeting this standard, the prisoner must demonstrate a specific link between the alleged retaliation and the exercise of a constitutional right.  See Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995); Valandingham v. Bojorquez, 866 F.2d 1135, 1138-39 (9th Cir. 1989).  The prisoner must also show that the exercise of First Amendment rights was chilled, though not necessarily silenced, by the alleged retaliatory conduct.  See Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000), see also Rhodes v. Robinson, 408 F.3d 559, 569 (9th Cir. 2005).  Thus, the prisoner plaintiff must establish the following in order to state a claim for retaliation: (1) prison officials took adverse action against the inmate; (2) the adverse action was taken because the inmate engaged in protected conduct; (3) the adverse action chilled the inmate's First Amendment rights; and (4) the adverse action did not serve a legitimate penological purpose.  See Rhodes, 408 F.3d at 568.

Defendants argue:

> Here, Plaintiff's retaliation claim must fail. First, Plaintiff's grievance was filed **after** the RVR. (SUF 36.) Thus, Defendant Arredondo's RVR could not have been filed in response to Plaintiff's First Amendment protected activity (*i.e.* filing a grievance). *See* (SUF 36), *Rhodes*, 408 F.3d at 567-68 (footnote omitted). Plaintiff also admitted during his deposition that he has no basis for his retaliation claim against Defendant Arredondo. (SUF 23.) And Plaintiff stated that he was willing to drop his retaliation claim. (SUF 23.) Consequently, the Court should dismiss Plaintiff's retaliation claim and grant Defendant Arredondo summary judgment.

ECF No. 55, pg. 24.

The Court agrees that Defendants are entitled to judgment as a matter of law on Plaintiff's retaliation claim against Defendant Arredondo.  First, as Defendants note, Plaintiff stated at his deposition that he has no basis for a retaliation claim and that he was willing to drop that claim.  Specifically, Plaintiff testified: "I can't say he [Arredondo] retaliated against me." ECF No. 55-2, pg. 51.  Plaintiff also stated that he has no evidence to support a retaliation claim.

See id.

Moreover, as Defendants also note, the timing of events belies any retaliation claim. Plaintiff claims in the first amended complaint that Defendant Arredondo retaliated against him by filing a false rules violation report because Plaintiff had filed a grievance against him. See ECF No. 17, pgs. 8-9. Attached as Exhibit A to the Arredondo declaration is the rules violation report as issue. See ECF No. 55-3, pgs. 5-8. This exhibit shows that the rules violation report was filed on the date of the incident at issue – October 12, 2020. See id. Plaintiff's grievance was filed on November 21, 2020. See ECF No. 55-5, pgs. 5-42 (Exhibit 1 to Barnes declaration). Because Plaintiff's grievance was filed after the rules violation report was issued, it cannot be said that the rules violation report was filed because Plaintiff filed a grievance.

## IV. CONCLUSION

Based on the foregoing, the undersigned recommends as follows:

1.      Defendants' motion for summary judgment, ECF No. 55, be GRANTED.

2.      Plaintiff's motion, docketed as a motion for summary judgment, ECF No. 61, be DENIED as moot.

3.      Defendant Hernandez be dismissed pursuant to Federal Rule of Civil Procedure 4(m) for failure to effect timely service of process.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

**Dated:  March 30, 2026**

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE

15